United States District Court
Southern District of Texas
**ENTERED**
July 23, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DOE *and* JANE DOE, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. H-16-1149 |
| SAUL MATTHEW EISENBERG *et al.*, | § § § § | |
| Defendants. | § § | |

ORDER

Pending before the Court is Plaintiffs' Motion for Award of Attorneys' Fees (Document No. 95). Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted in part and denied in part.

I. BACKGROUND

This is a revenge porn case. Sometime in 2015, Plaintiffs John Ousley ("Ousley") and Bridget Spiegel ("Spiegel") (Ousley and Spiegel, collectively, "Plaintiffs") began a romantic relationship, though Ousley was married at the time. Since then, Ousley has secured a divorce and Plaintiffs are now married to each other.[1] Ousley's former wife, Defendant Leslie Hippensteel ("Hippensteel"), found

---

[1] As indicated in the heading of the case, Plaintiffs were originally permitted to file the lawsuit under the pseudonyms John Doe and Jane Doe given the nature of the allegations. At the pretrial conference, the Court required the parties to use their real names going forward. At the time the lawsuit was originally filed, Jane Doe's real name was

two videos of extramarital activities between Plaintiffs on Ousley's computer (the "Videos") while Ousley and Hippensteel were still married. Plaintiffs allege Hippensteel provided the Videos to Spiegel's former fiancé, Defendant Saul Eisenberg ("Eisenberg"). Plaintiffs allege Eisenberg distributed the Videos to his lawyer, mother, and stepfather, to the private Christian high school where Ousley was employed, and posted the Videos on a porn website. Plaintiffs further allege distribution of the Videos resulted in Ousley losing his job and Plaintiffs suffering social and emotional harm.

Based on the foregoing, on April 27, 2016, Plaintiffs sued Hippensteel and Eisenberg (collectively, "Defendants"). Plaintiffs assert claims against Defendants for: (1) violation of the Electronic Communications Privacy Act (the "ECPA"); (2) conspiracy to violate the ECPA; (3) unlawful disclosure or promotion of intimate visual material; (4) conspiracy to unlawfully disclose or promote intimate visual material; (5) negligence; (6) invasion of privacy by intrusion to seclusion; (7) conspiracy to invade privacy by intrusion to seclusion; (8) invasion of privacy by public disclosure of private facts; (9) conspiracy to invade privacy by public disclosure of private facts; and (10) intentional infliction of emotional distress.

---

Bridget Spiegel. She and Ousley (John Doe) have since married and Bridget Spiegel now goes by Bridget Ousley. However, to avoid confusion, the Court refers to her by her maiden name where necessary in this Order.

Plaintiffs also assert claims specifically against Hippensteel for: (1) violation of the Stored Communications Act, 18 U.S.C. §§ 2701 and 2707; and (2) theft under the Texas Theft Liability Act. On September 23, 2016, the parties stipulated to dismissal with prejudice as to the claims against Hippensteel after reaching a settlement.

Prior to trial, Plaintiffs voluntarily dismissed all but the following five claims against Eisenberg: (1) unlawful disclosure or promotion of intimate visual material, Tex. Civ. Prac. & Rem. Code § 98B; (2) negligence; (3) invasion of privacy by intrusion to seclusion; (4) invasion of privacy by public disclosure of private facts; and (5) intentional infliction of emotional distress ("IIED"). On April 20, 2021, the Court commenced a four-day jury trial.[2] On April 23, 2021, the jury returned a verdict finding Eisenberg liable as to all claims except IIED[3] and awarding Plaintiffs a total of $15,000. On April 26, 2021, the Court entered judgment in favor of Plaintiffs based on the jury verdict. On May 3, 2021, Plaintiffs moved for attorneys' fees.

---

[2] The delay in getting to trial is due to the case having been stayed for over a year between January 2017 until May 2018. The case then continued to proceed and was set to go to trial in early 2020 but was delayed over another year due to the COVID-19 pandemic.

[3] The Court notes, during trial but before the Court read instructions to the jury, Plaintiffs voluntarily withdrew their IIED claim. Therefore, the jury was not instructed, nor received any interrogatories, as to the IIED claim.

## II. LAW & ANALYSIS

Plaintiffs move for attorneys' fees pursuant to Texas Civil Practice and Remedies Code § 98B.003. Specifically, Plaintiffs request $300,000 in attorneys' fees based on work done by their pro bono counsel. Under § 98B.003, a claimant who prevails on a claim for unlawful disclosure of intimate visual material shall be awarded reasonable attorneys' fees. Tex. Civ. Prac. & Rem. Code § 98B.003(a)(3). On April 23, 2021, a jury found Eisenberg liable for, *inter alia*, a violation of § 98B.[4]

Because the claims that Plaintiffs prevailed on were based on Texas law, the Court looks to Texas law for determining whether to award attorneys' fees. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Texas courts, like federal courts, apply the lodestar method to calculate attorneys' fees. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 493–96 (Tex. 2019). Under this approach, a court first multiplies the number of hours reasonably expended on the litigation by a reasonable hourly billing rate. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). Once the lodestar figure is initially determined, a court may adjust the figure upward or downward as necessary. *Id.*

The fee claimant bears the burden of establishing the rate charged and reasonableness of the hours expended. *Rohrmoos*, 578 S.W.3d at 498. At a

---

[4] *Jury Instructions and Jury Interrogatories*, Document No. 91 at 20.

minimum, the fee claimant should establish evidence of: (1) particular services performed; (2) who performed those services; (3) approximately when the services were performed; (4) the reasonable amount of time required to perform the services; and (5) the reasonable hourly rate for each person performing such services. *Id.* The Court addresses the reasonableness of the hourly rate and the number of hours expended in turn.

*A. Reasonable Hourly Rate*

Plaintiffs request hourly rates of $825 for David A. Bateman ("Bateman"), $494 for Hannah T. Warren ("Warren"), and $443 for Knop ("Knop") (the "Requested Rates"). To establish the reasonable hourly rate for the movant's attorney, the Court must consider the attorney's regular rate as well as the prevailing market rate, which is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 499 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 (1984)). Evidence of the reasonableness of a proposed hourly rate must include an affidavit of the attorney performing the work and information about rates billed and paid in similar lawsuits. *Id.* The Court may also use its own expertise and judgment to make an independent determination of the value of an attorney's services. *Davis v. Bd. of Sch. Comm'rs of Mobile Cty.*, 526 F.2d 865, 868 (5th Cir. 1976).

Here, Plaintiffs produce the declaration of Bateman in support of the Requested Rates.[5] Bateman is the lead attorney and partner on the case for Plaintiffs. In his declaration, Bateman states the Requested Rates are based on the average hourly rates charged for Bateman, Warren, and Knop throughout the years.[6] Bateman states he has been licensed to practice law in the state of Washington since 1984 and is currently a partner at K&L Gates's Seattle office.[7] In addition, the biography to his declaration shows Bateman is the co-founder of the Cyber Civil Rights Legal Project, which provides pro bono legal services to victims of revenge porn globally and has helped thousands of clients in these types of cases.[8] Bateman also states his rate is at or below the rates normally charged in Houston, Texas by experienced litigation partners.[9] Bateman also discusses the credentials of Warren and Knop, associate attorneys in K&L Gates's Houston and Fort Worth offices,

---

[5] *Plaintiffs' Motion for Award of Attorneys' Fees*, Document No. 95 at 6, Exhibit 1 (*Declaration of David A. Bateman in Support of Plaintiffs' Motion for Award of Attorneys' Fees*) [hereinafter *Declaration of David A. Bateman*].

[6] *Declaration of David A. Bateman*, *supra* note 5, at 4.

[7] *Declaration of David A. Bateman*, *supra* note 5, at 1 Exhibit 1-1 (*Biography of David A. Bateman*).

[8] *Declaration of David A. Bateman*, *supra* note 5, at 3, Exhibit 1-1 (*Biography of David A. Bateman*).

[9] *Declaration of David A. Bateman*, *supra* note 5, at 4–5.

respectively.[10] Bateman produces evidence showing both Warren and Knop graduated from law school in 2017 and have been practicing law since that time.[11] Bateman states that the rates for Warren and Knop are based on market conditions and that they are comparable to rates charged for similarly qualified attorneys in Houston, Texas.[12] The reasonableness of the Requested Rates are not disputed.

The Court finds the Requested Rates are reasonable hourly rates for Bateman, Warren, and Knop. The Court will therefore apply these rates to determine the appropriate amount for attorneys' fees. The Court next turns to the hours expended.

B.   *Reasonable Number of Hours*

Plaintiffs request attorneys' fees based on a total of 927.7 hours expended by Bateman, Warren, and Knop. Eisenberg contends Plaintiffs' request is unreasonable, because Plaintiffs have not provided sufficient justification for the hours expended. To establish the reasonable number of hours expended on the litigation by the movant's attorney, "courts customarily require the [movant] to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for non-compensable

---

[10] *Declaration of David A. Bateman, supra* note 5, at 2, Exhibit 1-2 (*Biography of Hannah Warren*), Exhibit 1-3 (*Biography of Andrew Knop*).

[11] *Declaration of David A. Bateman, supra* note 5, at 3, Exhibit 1-2 (*Biography of Hannah Warren*), Exhibit 1-3 (*Biography of Andrew Knop*).

[12] *Declaration of David A. Bateman, supra* note 5, at 4.

7

hours." *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 852 (S.D. Tex. 2017) (Hittner, J.) (citing *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990)). The base calculation should reflect hours "reasonably expended for services necessary to the litigation." *Rohrmoos*, 578 S.W.3d at 498. The movant must produce evidence of billing judgment which is "documentation of the hours charged and of the hours written off as unproductive, excessive or redundant." *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006) (per curiam). Courts are to exclude from the lodestar calculation all time that is "excessive, duplicative, or inadequately documented." *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir. 1993).

Plaintiffs request attorneys' fees based on a total of 927.7 hours expended, broken down as follows: 380.9 hours by Bateman, 193.7 hours by Warren, and 353.1 hours by Knop.[13] In support, Plaintiffs produce Bateman's declaration and billing records showing dates, the billing attorneys, hours expended, hourly rates charged, cost for each task, and a short description of the work performed.[14] The billing records accurately reflect the hours requested by Plaintiffs.[15] Bateman states that

---

[13] *Declaration of David A. Bateman, supra* note 5, at 4.

[14] *Declaration of David A. Bateman, supra* note 5; *Plaintiffs' Motion for Award of Attorneys' Fees*, Document No. 95, Exhibit 1-4 (*Billing Records*) [hereinafter *Billing Records*].

[15] *See generally Billing Records, supra* note 14.

three other attorneys who have since left the firm also billed hours on this case, but Plaintiffs are not requesting any fees for those hours.[16] The hours worked by Bateman, Warren, and Knop were spent litigating this case since 2016.[17]

The billing records do not include any hours worked between December 2017 and July 2018,[18] which reflects the time the case was stayed.[19] The billing records do include 105.3 hours[20] of work done in 2020—a substantial part of which was geared toward trial preparation.[21] The case was set for trial in May 2020, but trial was continued until April 2021 due to the COVID-19 pandemic. The billing records show from March 29, 2021, through the end of trial on April 23, 2021, Bateman, Warren, and Knop expended 400 total hours of work preparing for and attending trial, equaling $256,651 in attorneys' fees.[22] Considering the billing records and the

---

[16] *Declaration of David A. Bateman, supra* note 5, at 1.

[17] *Declaration of David A. Bateman, supra* note 5, at 2–4; *See generally Billing Records, supra* note 14. Warren and Knop began working on the case in 2019 and 2018, respectively. *Declaration of David A. Bateman, supra* note 5, at 4.

[18] *Billing Records, supra* note 14, at 1.

[19] *Order*, Document No. 40 (staying the case on January 10, 2017, until resolution of the criminal case being brought against Eisenberg for the same underlying conduct as this case); *Order*, Document No. 42 (lifting the stay in this case on May 1, 2018).

[20] This includes 6.4 hours by Bateman, 26.4 hours by Warren, and 72.5 hours by Knop. *Billing Records, supra* note 14, at 9–11.

[21] *Billing Records, supra* note 14, at 9–11.

[22] *Billing Records, supra* note 14, at 11–13.

hours documented during the additional months Plaintiffs had for trial preparation, the Court finds some of the time billed is excessive or duplicative. The Court therefore reduces the hours requested by the 105.3 hours worked in 2020. Accounting for this reduction, the Court finds 374.5 hours by Bateman, 167.3 hours by Warren, and 280.6 hours by Knop are reasonable.[23] The Court turns to calculate the lodestar.

C.  *Lodestar Calculation*

The lodestar is calculated by multiplying the reasonable number of hours expended on the litigation by the reasonable hourly rate. *Rohrmoos*, 578 S.W.3d at 496. Having determined the reasonable hourly rate and the reasonable number of hours expended, the Court calculates the lodestar as follows:

| Billing Individual | Hours | Hourly Rate | Total |
|---|---|---|---|
| David A. Bateman | 374.5 | $825 | $308,962.50 |
| Hannah T. Warren | 167.3 | $494 | $82,646.20 |
| Andrew R. Knop | 280.6 | $443 | $124,305.80 |
| | | **Lodestar Amount Total:** | **$515,914.50** |

---

[23] To calculate these amounts, the Court subtracted the hours indicated in note 20 from the hours requested for each attorney. *See supra* note 20.

10

D.   *Adjustment of the Lodestar*

Plaintiffs contend the lodestar is presumptively reasonable, but that they are still only seeking $300,000 in fees. Eisenberg contends Plaintiffs should not be awarded $300,000 in attorneys' fees, because that amount is significantly greater than the damages awarded and does not align with the type of representation in this case. The lodestar method is a "short hand version" of the *Arthur Andersen* factors and is presumptively reasonable. *Rohrmoos*, 578 S.W.3d at 494–96 (citing *Arthur Andersen & Co. v. Perry Equip. Co.*, 945 S.W.2d 812, 818 (Tex. 1997)). Nevertheless, the lodestar may be adjusted up or down if the presumption is overcome. *Id.* at 496, 500–02. When deciding whether to make an adjustment to the lodestar, courts consider the factors articulated in *Arthur Andersen*, which are as follows: (1) the time and labor required, the novelty and difficulty of the questions, and the skill required to perform the legal services; (2) the likelihood that the acceptance of the case would preclude other work by the attorneys; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the attorneys; and (8) whether

11

the fee is fixed or contingent. *Id.* at 493–94 (citing *Arthur Andersen*, 945 S.W.2d at 818).[24]

The Court has carefully considered each of the factors as applied to this case and determines that several factors are not accurately reflected in the lodestar. Specifically, the Court finds the amount involved and the results obtained, the nature of the professional relationship with the client, and the type of fee requires additional consideration in this case.

Here, Plaintiffs seek $300,000 in attorneys' fees, which is approximately 58% of the lodestar in this case. At the pretrial conference, when the Court asked Plaintiffs how much they were suing for and would put to the jury for damages, Plaintiffs indicated they would not be requesting any specific amount of damages. In accordance with this representation, Plaintiffs did not argue a specific amount of damages to the jury during summation. Rather, as stated in their motion for attorneys' fees, Plaintiffs' priority was to obtain "a legal determination that Defendant Saul Eisenberg posted and publicized their intimate videos."[25] The jury

---

[24] The *Arthur Andersen* factors, which are crafted after Texas Disciplinary Rule of Professional Conduct 1.04, are essentially the same as the factors considered by federal courts from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Rohrmoos*, 578 S.W.3d at 490–94 (discussing and comparing the lodestar calculation analyses used by federal and Texas courts).

[25] *Plaintiffs' Motion for Award of Attorneys' Fees*, Document No. 95 at 17.

12

awarded a total of $15,000 in damages to Plaintiffs.[26] The requested attorneys' fees are twenty times the amount of damages awarded. It is undisputed Plaintiffs' legal representation was on a pro bono basis.[27] Though attorneys' fees in excess of damages and pro bono representation do not bar recovery of attorneys' fees, the Court finds these factors warrant a downward adjustment to the lodestar in this case. The Court therefore reduces the lodestar by 80%. Thus, the Court finds Plaintiffs are entitled to $103,182.90 in attorneys' fees.[28] Accordingly, the motion for attorneys' fees is granted as to $103,182.90.

### III. CONCLUSION

Based on the foregoing, the Court hereby

**ORDERS** that Plaintiffs' Motion for Award of Attorneys' Fees (Document No. 95) is **GRANTED IN PART** and **DENIED IN PART.** The motion is granted

---

[26] *Jury Instructions and Jury Interrogatories*, Document No. 91 at 21–22 (awarding $10,000 in damages to Ousley and $5,000 in damages to Spiegel).

[27] Under Texas law, an award of attorneys' fees is not barred merely because legal representation is provided on a pro bono basis. *See Van Dyke v. Builders West, Inc.*, 565 S.W.3d 336, 345–46 (Tex. App.—Hous. [14th Dist.] 2018, pet. denied) (discussing cases where requested attorneys' fees were not required to be actually incurred by the plaintiffs); *Brown v. Comm'n for Lawyer Discipline*, 980 S.W.2d 675, 683–84 (Tex. App.—San Antonio 1998, no writ) (holding private lawyers representing plaintiffs on a pro bono basis were entitled to recover reasonable attorneys' fees).

[28] The Court calculated this amount by adjusting the lodestar as follows: $515,914.50 − ($515,914.50 × 0.80) or alternatively, $515,914.50 multiplied by 0.20. *See supra* Part II(C) (providing the calculated lodestar).

13

as to $103,182.90 in attorneys' fees. The motion is denied as to the remainder of the requested attorneys' fees.

SIGNED at Houston, Texas, on this **23** day of July, 2021.

*David Hittner*
DAVID HITTNER
United States District Judge